The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Well, good morning, everyone. Welcome to the Fourth Circuit. We'll hear argument in Grimmett v. Freeman. Mr. Dreeben, whenever you're ready. Thank you, Judge Diaz, and may it please the Court. My name is Michael Dreeben and I represent the appellants in this case. North Carolina is one of only nine states that has a criminal statute specifically directed at candidate activities. These states have not enforced these statutes throughout history. We are aware of only one prosecution under any of the statutes in North Carolina in 1947. This state of affairs reflects that the states have not found it necessary. Forty states have no such statute whatsoever, and the state cannot demonstrate that the experience of the states requires any such criminalization of campaign speech. As a content-based statute directed at the political process, North Carolina can only sustain the validity of its statute if it can satisfy strict scrutiny. It cannot do that. The statute is not necessary to further a compelling state interest. The interest of the states and of the United States in campaigns that are free from defamatory, derogatory, false campaigning is apparent, but the necessity of a criminal statute to enforce that is not. The state has the burden of showing through empirical evidence that such statutes are needed to serve the interest of election integrity, and it cannot do that. In fact, the statutes in operation tend to chill political speech, skew the democratic process, and interfere with the very interests that the statute purportedly is designed to serve. On top of that, the statute is under-inclusive of false statements that can impinge on election integrity, and that undermines the state's asserted interest in protecting the... Mr. Draven, can I ask about that? So we don't always command legislatures to legislate broadly. They're allowed to experiment and legislate narrowly if they so choose. So what's the problem with having a statute like this one that targets a specific component of a problem that the legislature apparently seemed to think affected the political back and forth? So, Judge Diaz, this statute is one-sided in the kinds of speech that it affects in the electorate. It says nothing about a candidate that chooses falsely to inflate the candidate's credentials to pollute the electoral process with false claims against himself. And instead of the ordinary remedy in our political process of counter-speech, the statute chills the opposing candidate or those allied with the opposing candidate from countering false laudatory statements. So if the statute included those components which you say have been omitted, would it pass constitutional muster? Well, there are other components that are also missing from this statute that I think undermines the compelling state interest, and I would not be prepared to state categorically that any criminal libel statute directed at the political process is constitutional, because I think at the most fundamental level, the state cannot show that the remedies of counter-speech in our political process and civil defamation actions to protect reputation are inadequate. And it is the state's burden to come forward to justify a criminal remedy in an area where this country has traditionally not had criminal remedies. Dating back to the Alien and Sedition Act, which is widely regarded as unconstitutional, the traditions of our First Amendment are that counter-speech and free debate in the political process are the order of the day. It sounds like you might not be prepared to answer this question, but the district court below seemed to think that, first of all, thought that Garrison, the Supreme Court case, remained good law, which is a much broader defamatory statute than what we have here, but for the absence of a malice requirement in that statute, it would seem the Supreme Court, at least as of 30 years ago, would have been inclined to uphold a statute like that. So what about that kind of a statute? At the outset, Garrison did not actually uphold the constitutionality of any statute. I understand that it can be read as saying that if the New York Times actual malice standard were incorporated into a criminal libel statute, that would be enough, but that actually is not the holding of the court because Louisiana's statute did not involve an actual malice standard. So it's dictum. Beyond that, the statute in Louisiana was a generic statute. It was not specifically aimed at the political process, so there are different issues that are raised by a libel statute that's aimed at the political process. For example, in the one case in history that I found where the court has upheld a criminal libel statute in the Boharnais case, Boharnais v. Illinois, it was a group libel statute that was specifically aimed at false accusations or degradation of people based on race, and the court dropped a footnote, footnote 18, in which it specifically said, of course, if this were aimed at candidates or political parties, very different questions would be raised. Political men or political people who have thrust themselves into the public eye stand on a very different footing. And so that tracks into a very different tradition than the one that the court looked at in Garrison. It also creates the RIV problem, right? If you're only going to criminalize political libel, now you've got an RIV problem. That's correct. There are subsequent developments in constitutional law, Judge Heitens, that I think reflect evolution from where Garrison is. Even within a category, if we have statements made with actual malice about political candidates, could be criminalized under a broader rubric of unprotected speech when it's false and made with actual malice, the court's holding in RIV v. City of St. Paul is that even within a category of unprotected speech, further distinctions based on content need to be run through strict scrutiny. And that's where I think this statute fails. If you do run the statute through strict scrutiny, the state has the burden of showing a compelling interest in narrow tailoring and that the statute actually furthers the interest. I don't think it can make any of those showings. And if I can make one more comment about how Garrison has been left behind other Supreme Court cases, the centerpiece of Garrison's analysis was false statements made with actual malice are not subject to constitutional protection at all. And the Supreme Court repudiated that reasoning in United States v. Alvarez, where the plurality opinion specifically noted Garrison along with a litany of other cases that the government had cited that contained that broad language. And the plurality said those statements exist, but they don't carry the day when we are confronted with a statute that actually addresses false statements. We do need to run it through first. Didn't the court say, to be fair, that those statements don't carry the day because the context, the cases where those statements came from dealt with categories of speech that were, for our purposes, Garrison was defamation, right? A category of speech that the court considered outside of the normal First Amendment approach. And so we may have a preliminary question here. Are we dealing with a defamation statute? And then if we're not, if the I think it might be a stretch to say that the Supreme Court cast off the idea that false speech in other contexts like in defamation is now fair game under the First Amendment. I agree with that, Judge Rushing. The court's point in Alvarez was that you need falsity plus, but Garrison did not rely on that. Garrison's statement that false statements categorically fall outside the scope of the First Amendment was integral to the court's reasoning, and that did not survive Alvarez. We do get into the question, I think as Your Honor properly raises, of whether a criminal defamation statute can survive. Surely we know that there are civil defamation statutes that survive. And those statutes, I think at a minimum, show that a criminal defamation statute that's aimed at protecting individual reputation is neither necessary nor narrowly tailored. The state has made no effort to show that a civil damages defamation remedy is inadequate to protect reputation. And if in any context it would be adequate, it would be in the context of political candidates who have a platform in society in which they can... Can I ask you about that? Not to move you off of this, but before you sit down, I wanted to ask about the irreparable harm piece of this. And I know innumerable cases say that any violation of your constitutional rights, even for a small time, is irreparable. But in this case, my understanding is you want, or your clients, want an injunction to prevent the indictment. To prevent the DA from bringing charges based on this advertisement until the case is done. This is a preliminary injunction. It would last until the district court issues a judgment. And I wanted to ask, how will your clients' First Amendment rights be infringed in the interim until a judgment is delivered if there's not an injunction? So our clients are involved in the political process. They are an elected official and people who are involved in campaigning. And the allegations of the complaint include that they would be chilled in the exercise of First Amendment rights by the potential threat of criminal... Are there campaigns currently happening? No, there are not campaigns that are happening at this moment, but these are people who are engaged in public life. Will there be a campaign between now and the expected time, how long it would take for a judgment in the district court? I know we just finished an election cycle. How long until the next campaign cycle starts? I don't know, but one of the plaintiffs in the case is a media consultant that is regularly involved in the political process. And as Your Honor knows, I included an affidavit that indicated that that entity would be chilled by the threat of criminal prosecution. They said they may have to potentially reconsider possibly whether they would continue to defend North Carolina. I understand your reservations about that. The panel concluded that at the preliminary stage we had shown irreparable harm, but Judge Rushing, what I would emphasize at the end of the day, if you're not persuaded on irreparable harm, is we're on appeal from a preliminary injunction in which the district court said we did not have a likelihood of success in showing that the statute was facially unconstitutional. If the court reverses that determination, it can leave everything else for the district court to determine about the appropriateness of injunctive relief. You need a ruling on the constitutional issue to go back to the district court, whether we say there should be an injunction or not. That's correct. The Fourth Circuit does not have to determine that issue without the benefit of a full airing in the district court. We do think that the record unequivocally shows a harm to First Amendment rights. We may disagree about whether there is irreparable harm. Usually in these cases you have, like, I want to say X today and tomorrow and next month, and unless there's an injunction, I'm going to be prevented from saying X. But that's not the argument here. X was said two years ago. Nobody wants to say it again. But they don't want to be indicted, which the Supreme Court has told us is not irreparable harm. There's a tension there. I think, Judge Ruschin, that may be a little bit of ignoring parts of the record in which the DNA issue is still alive in North Carolina. That's what prompted this case. It began with speech, counterspeech, and counterspeech, which is the way the First Amendment ought to operate. But is it alive today? Is this an issue for campaigns right now? It can be. We have an affidavit from a potential opponent of a Pelley who indicated that he would speak out on the DNA issue. He wouldn't be covered by our injunction, would he? Our injunction just has to do with the parties in front of the court. If we're focused exclusively on irreparable harm, yes. If we're focused on the question of whether there is irreparable harm because of your court and the Supreme Court's recognition that any chill of First Amendment rights is irreparable harm, then I think this goes to the public interest factor. Mr. Dreeben, can I ask you two procedural questions? My understanding is there were some interventions that happened after the district court ruled. Could you just help me understand what happened and what the current state with regard to those is? Yes. Judge Hydens, they weren't exactly interventions. The complaint was amended to add three additional plaintiffs. Who are they? After the issuance of the presentment. And then a notice of appeal was filed with this court that amended to include all six plaintiffs. How can someone who wasn't a plaintiff at the time of the district court's order appeal from that order? My understanding is that by amending the complaint, they became subject to the district court's order. That is not explicitly stated, I don't think, in any of the original plaintiffs as proper appellees and doesn't reach the issue of the others, then that is a matter that can be addressed on remand. But I think it's fairly evident, even if not explicitly stated, that the district court's ruling that there was not a likelihood of success equally applies to the three additional plaintiffs who are actually now facing the threat of prosecution in a more realistic way. I'd like to turn at least briefly to the narrowest ground on which I think the court could conclude that there's a likelihood of success. And that's the ground that the panel relied on at the injunction pending appeal stage. This statute is very unusual. I looked this morning at the other statutes that different states have that have addressed false speech in the campaigning context. All of them are explicitly limited to false speech. This one is not. It covers derogatory speech about a candidate in a political campaign. And it has two alternative mental states. One of them is knowing falsity. And I will concede that that one at least strongly implies that falsity must be shown. The other one is reckless disregard for truth or falsity. That component of the mental state requirement does not imply any need to show falsity. And it provides a pathway for a prosecutor in every single case to choose the easier route. Rather than showing that there is in fact falsity in the statement that's been challenged, the prosecutor can simply allege that it is derogatory, which means disparaging. The North Carolina Supreme Court in State v. Peter Silley so held as to a statute that appears one section before our statute in the very same statutory series does not imply falsity. The prosecutor can allege a derogatory statement in a campaign and say that it was made with reckless disregard for truth or falsity and it was intended to influence the campaign. That states a violation. And anyone in North Carolina can look at the face of the statute and see that it relieves the prosecution of that burden. And under Garrison and other cases, truthful speech, particularly in a political campaign, probably in any context, cannot be subjected to a criminal penalty. And on that basis, the statute fails over-breath analysis and is facially unconstitutional. Mr. Driven, you're a few minutes over your time. I'll stop you there and you'll have some rebuttal. Thank you. Mr. Zasotarski. Thank you, Judge Diaz. And may it please the court, my name is Joe Zasotarski and I represent the appellee, the office of the district attorney in this case. The district court correctly found that this statute is a criminal defamation statute that is authorized by Garrison and is constitutional. At the outset, I'd like to stress the extraordinary nature of the relief that the plaintiffs are seeking here. They're asking this court to declare a state statute unconstitutional on its face. The law correctly disfavors these types of attacks because a state law is a reflection of the will of the legislature, that is the will of the people. And we've cited in our brief the various aspects of the law that talk about how difficult it is for somebody to make a facial challenge to a statute. I'd like first, if I may, members of the court, to talk a little bit about Garrison because that really is central and necessary to the plaintiff's attack. Before you get into that, can I ask you a procedural question? I reread the district court's opinion this morning. Do you agree the district court denied a preliminary injunction based solely on lack of likelihood of success? Yes. Do you agree with your colleague on the other side that we wouldn't necessarily have to reach any of those other issues? In fact, given the abuse of discretion standard, maybe we shouldn't. But do you agree at least that we don't have to reach any other issues? I believe, Your Honor, yes, because the district court's order specifically says that she was denying the motion based on the lack of likelihood of success on the merits. Great, thank you. With respect to Garrison, the plaintiffs basically assert the notion that Garrison doesn't mean what the district court said it means. And we would argue, too, that Garrison very clearly means what the district court said it means. The district court said criminal libel statutes prohibiting false defamatory statements made with actual malice do not violate the First Amendment, relying on Garrison. And this was reaffirmed. There's been some discussion about Garrison being an older case from the 1960s. This was reaffirmed less than a month ago by the First Circuit in Freese. Mr. Dreeben beat me to the punch with submitting the supplemental authority notice. In Freese, there was a facial challenge to the New Hampshire criminal defamation statute. And Freese said Garrison controls. Was that a broad statute? Did it apply solely? Yes. Well, isn't that the problem here? I mean, we've got a statute that is targeted at a specific subset of speech, the very core of the First Amendment political speech. I mean, what does Garrison have to say about that? Well, what Garrison says, Your Honor, is that criminal defamation statutes fall outside of the traditional categories of expression that are protected by the First Amendment. So Freese, the First Circuit case, held there that that general statute, which, by the way, does apply to political speech. The defendant in Freese, the criminal defendant, one of the things he was being prosecuted for was the criticism of public officials. And the district court case in Freese specifically talks about that. But what about the R.A.V. problem? Because I agree with you. The Supreme Court has said that criminal libel is not protected by the First Amendment. And let's assume that's still good law. But then R.A.V. comes along and says you cannot, within the category of unprotected speech, distinguish based on content because R.A.V. involved a statute that barred intimidating speech. And we also know that threatening speech is not protected by the First Amendment. But R.A.V. says you can pass a law criminalizing all threatening speech, but you can't pass a law that criminalizes some types of threatening speech but not the others. Why isn't that this case? It's not, Your Honor, because of what's identified in R.A.V. Justice Scalia goes on in R.A.V. to talk about the federal statutes that, for example, criminalize threats against the President. They don't criminalize threats against other members of government or other people involved in government. And R.A.V. says that's okay because you're looking at who the subject of the speech is. Here, this statute, we're looking at the subject of the speech. Okay, you're quite right about that. R.A.V. doesn't say a statute that further distinguishes categorically and constitutionally. I take your point there and I think you're quite right. But what it says is to the extent you want to criminalize a subset, the reason for criminalizing the subset has to relate to the reason that the speech is unprotected in the first place. And so for the Presidential Threat Statute, we say, you know, threats against all government officials are bad, but it seems self-evidently obvious that threats against the sole executive of the United States are particularly bad. What evidence could we cite to say that criminal defamation involving politicians is uniquely bad to the point where we're going to criminalize only that type of definition? I mean, if anything, your friend on the other side says the minute you run for office, you sort of kind of accept that people are going to lie about you sometimes in a way that private citizens don't. Well, Your Honor, I think that we have to take one step back in R.A.V. which is here, this is a statute that says it's criminalizing false defamatory statements, which are traditionally outside of the First Amendment. I'm sorry to interrupt you, but your colleague on the other side makes the point that the statute doesn't simply criminalize false defamatory statements. And the way it's worded, it actually applies to even truthful statements. Well, and Your Honor, we would very strongly disagree with that. I bet you would, but the problem is that the North Carolina Supreme Court, as Mr. Dreeben pointed out, in an adjoining section of that very same statute defined the word derogatory to mean both false statements and statements made truthfully with reckless disregard. So why shouldn't we apply that definition here? Because the subsection in Peter Silley, Your Honor, that the Supreme Court of North Carolina was interpreting, does not have the modifier, the actual malice Sullivan modifier in that part of the statute. It does not say what this statute says in terms of knowing such report to be false or in reckless disregard of its truth or falsity. That phrase, which is in our statute, is not in the subsection that the Peter Silley Court was examining. That's why the Peter Silley Court said derogatory statements there mean truthful statements mean false statements. There was no modifier. If this... Wait, what's the modifier we're talking about? Knowing such report to be false or in reckless disregard of its truth or falsity. I'm sorry, go ahead. No, I'm just saying, is the modifier knowingly? I'm just trying to make sure. This is literally just I'm trying to make sure I'm following. Is that whole phrase the modifier you're referring to? Yes, that whole phrase is not in the subsection that the Peter Silley Court was examining. And just as a matter of basic English grammar, how does that phrase knowing such to be false or in reckless disregard not create too disjunctive? The first is where I know that it's false. And the other is when I say it in reckless disregard for its truth. Candidly, I just don't see how the district court got to reading the statute to say that it requires a knowingly false statement because it seems... I mean, I agree the first provision requires a knowingly false statement. I just don't see how I can read the words after or as requiring the statement to be false. Because, Your Honor, I think we would argue to you that when you apply North Carolina's rules of statutory construction, which we've set out in our brief, the plaintiff's argument violates every one of them. First, North Carolina law says we have to read a statute to avoid constitutional problems. Second, it says that we have to read all of the words together in conjunction with each other and apply them. Here, the plaintiff's argument is that this statute will apply to actually false statements, recklessly false statements, apparently recklessly true statements, whatever those are, but not apply to true statements under their argument. I mean, Mr. Drabin can speak for himself. My understanding is they think the statute applies to a statement that is in fact false that you say knowing that it's false. So if I lie to you, if I say I won the Medal of Honor, which I did not and I know I did not, so if I say I won the Medal of Honor, that is a knowingly false statement. And also to a statement where, honestly, I don't know whether it's true or not, but I make it... So, for example, if I said to you I am descended from extraordinarily famous person X, do I know that's false? No. Do I have it? If I say I am descended from, you know, Henry VIII, I mean, do I know that's false for sure? I mean, I guess I don't know for sure that's false. I also have no particular reason to believe that it's true. And that, Your Honor, is the difference. I think that the plaintiff's argument relies on an incorrect reading of what that Sullivan standard means. And we can go back to... Oh, no, I know what the Sullivan standard means. I mean, I think that the... Although this statute, just to clear this up, this statute was passed long before New York Times v. Sullivan, right? It was, but it uses the same language. Well, but what I'm saying is there's no plausible argument that the North Carolina legislature, when they enacted this statute, was actually trying to codify New York v. Sullivan because New York Times v. Sullivan hadn't been decided when they wrote this statute, right? That is correct, Your Honor. I would note, Your Honor, that the North Carolina legislature has repeatedly revisited this statute over and over and over. The annotations to the statute show that as recently as 2018. And they haven't changed that language. And, of course, we know the law that says that we presume that the legislature acts with awareness of the law and... Right, but they can't act with awareness of a Supreme Court decision that hadn't been decided yet. No, but once that was decided, we can presume that the legislature knew that and when they were reviewing this statute as reflected by the legislative history, that they accepted that this is the standard. Counsel, can I ask, so do you concede that we're in strict scrutiny land? I mean, we need to look at this statute applying strict scrutiny. Well, Your Honor, below we argued that once you get through garrison, it's over. And the district court disagreed with us. We've made that argument in our brief. We would stand by the argument we made, but we would also argue that as the district court found, this statute meets strict scrutiny. Well, okay, let's assume for the moment that you do have to get past that burden. So one of the components of strict scrutiny is you actually have to show evidence in the record of alternative measures that were tried and failed before you can apply, you know, this sort of bludgeon to what is at the very core of First Amendment speech. So what's the evidence in the record supporting the need for this statute? I mean, it's been around for what, 40, 50 years? There's been one prosecution? I mean, what does that signal about the statute? It signals, Your Honor, I'd ask the court to consider the whole picture there, which is it has been around for a long time. Every two years now, we have an election cycle where all sorts of claims are made. In the amicus brief, Your Honor, it sets out a long history of all the civil libel cases that have been filed that have involved political speech. Yet our legislature in reviewing this statute over and over and over and amending other portions of the statute have not changed the statute. Well, have they made a showing? Have they indicated somewhere that, you know, the civil remedies aren't effective, the counter speech that Mr. Dreeben points to as a remedy aren't effective? Well, Your Honor, I would argue that the fact that they've left the statute in place shows that because they've changed other portions of the statute, that action by the legislature in and of itself is evidence. And again, I think that this plays into some of what we would perceive as the plaintiffs trying to create an impossible burden for the constitutionality of the statute. For example, the over-breath issue that we were discussing about whether this phrase reasonably believed to be true is something that causes the whole statute to be invalid. Well, we know that the statute covers false derogatory statements, which is defamation. We know the statute covers that. False defamatory statements about your political opponents that are unflattering, right? Not all false defamatory statements. Correct, correct. False derogatory statements about your political opponent that are intended to affect the candidate's chances. Can I ask you that? So there's a question I had about thinking about this. So the Supreme Court has had cases about content discrimination, about viewpoint discrimination. This statute, to me, has another potential problem, which is that it's motivation-based discrimination. So you just made me think of when you just said, if calculated to injure your political opponent. So this statute, I was just trying to think of an example, but imagine that someone from a political candidate's past had a bad experience with them and they came forward as part of their healing process from a trauma. And they testify under oath and the court believes them. I mean, do I know that this is likely to hurt this person's political prospects? Yeah, I do know that, but that's not why I'm doing it. I'm doing it because something really bad happened to me, and as part of my processing the thing really bad that happened to me, I'm bringing this to light now. As I read the statute, that doesn't, but imagine it's false and defamatory. It satisfies all. I guess what troubles me even more about this statute is that it, in addition to all the other things we've identified, seems to make whether you violate the statute turn on what's in your heart when you say it, like why you're saying it. Why isn't that an additional First Amendment problem? Well, we would argue, Your Honor, that it's not a problem. It's one of the narrowing features of the statute. So it's okay if I defame someone because I want his spouse to leave him, but it's not okay if I defame him because I want him to lose an election? The statute has to be narrowly tailored to the compelling state interest of preventing fraud and libel in elections. Remember, the Supreme Court in McIntyre said that that is a compelling state interest, preventing fraud and libel. They specifically used that word. And that's where we would focus the court on, is that that part of the statute actually focuses us in on that very issue and furthers that compelling state interest. Your Honor, going back to the issue of this little phrase, reasonably believed to be true, an overbreath challenge, we'd ask the court to remember, the United States Supreme Court said in United States v. Williams, to strike down a statute on overbreath grounds, it must be shown the statute's overbreath is substantial, not only in an absolute sense, but also relative to its plainly legitimate suite. And then in R.A.V., in the concurrence, actually, the court goes on to talk about, in addition, Williams also says that you would have to show that the statute is not susceptible to limitation on partial invalidation. Here, this statute, we talk about hypotheticals of reasonably believing to be true and whether that falls under the language of the statute. This statute is clearly focused on preventing false derogatory speech. That's the focus of the statute. It ties in directly, directly with what the compelling state interest is behind the statute. Let me ask you about that, because your friend on the other side says it isn't, in at least two respects. So under this statute, I can completely lie about my own background. I can falsely claim to be a Medal of Honor winner. I could Photoshop a photo that puts me with someone that I think that voters will really like. You know the examples. I could lie in a thousand different ways that benefit me, and the statute has nothing to say about that. I could also lie about a tremendous number of issues of tremendous public importance that are not literally about my opponent, but every reasonable person is going to understand are about my opponent. Why isn't that a problem? That the statute only seems to criminalize saying intentionally really mean things about your opponent, but you can, in the context of an election, lie about literally anything else, and the statute doesn't care. Well, Your Honor, for a number of reasons. First of all, in terms of under-inclusiveness, we've cited the law to the court, the Williams-Uly case, that talks about there is no freestanding under-inclusiveness limitation. But it causes us to question this, because a more cynical view is that this is a statute that is designed to protect. I mean, I think one of the amicus briefs says this. A cynical view is this is designed to protect certain people from having certain things said about them during political campaigns that they don't want said about them. Well, Your Honor, the reason that this statute is not under-inclusive is because it focuses on that area of speech that is traditionally not protected by the First Amendment. That is defamation. When you talk about false latitory speech that the other side talks about, well, you get into Alvarez. And what did Alvarez say? Alvarez said that's outside of the defamation area that we're talking about here. Defamation is one of those traditional categories that the courts have consistently said is outside the protection of the First Amendment. That's the focus of this statute. So that's why I don't think it's fair to put the burden on us in terms of under-inclusiveness, because this statute is focused in on that very specific area. Could I ask a question about the application of this statute here to this case? One of the objectives, you say, of the statute is to protect the electorate and ensure that accurate information is disseminated to those who have to make a decision with respect to candidates. But how does this statute really do anything in that regard? I mean, the criminal justice system just seems really ill-suited to achieving that end. And here we are, what, two years? I think Judge Rush made the point. After the election, and we still haven't achieved any kind of resolution with respect to the merits of this case. I mean, isn't counterspeech the more effective way to go here? Well, Your Honor, I would argue a number of points. First, the district court talked about counterspeech and talked about how counterspeech is effective if there's time to do it and talked about the case law behind that. One of the points that the plaintiffs make in their reply brief, which unfortunately I don't get to respond to, is Well, you're here today. And I'm going to. They raise the issue of technology, and I think they're trying to sway the court that, hey, we live in this world where somebody can, you know, we're in the 24-hour news cycle. Well, there's a flip side to that, of course, which is we're also in an era of early voting. And in North Carolina, you can vote for months and months and months before Election Day. There's not just Election Day anymore. And if on Thursday night at 6 o'clock there is a false and defamatory report on the evening news about Candidate A, and I see that and I say, well, I'm going to go vote for Candidate B. But how does criminal liability solve that? I mean, I guess your argument is it's chilling, right? It chills you enough that you won't say the false thing. But I think Judge Diaz's point is a good one. Maybe you can't solve every false defamatory statement about a candidate, but speaking immediately after it is your best chance rather than a lawsuit two years later holding someone criminally liable. Well, I would argue to the court that it would. It would take two years or however long it would take. But it would have the effect of preventing that speech that is outside of the protection of the First Amendment, which, after all, is the point. And I think that you get into the balance of is the plaintiffs are asking the court to substitute its judgment about the efficacy of this statute for the legislatures. And where is the balance there? Where is the line? That's impossible to say, but I would stress to the court this law is the legislature's law. It's the will of the people of North Carolina. And they're asking a federal court to come in and tell the state legislature that it cannot have this law. And we would argue that as the district court correctly found, this law is constitutional under garrison, it's narrowly tailored to the compelling state interests, and we would ask the court to affirm the district court's judgment. Thank you, counsel. Thank you. Mr. Dreeben, you have some time for rebuttal? Thank you, Your Honor. Just a few brief points. First, on the meaning of the statute, in addition to the contrast between A8 and A9 that the court has already drawn, if you look further down in the statute 163-274, there are two provisions, 13 and 14, that explicitly apply to false representations. So the legislature knows how to target false speech if it wants to do that, and for the reasons that have been discussed, it did not do that grammatically in this case. And the effect of having the statute potentially apply to truthful speech made with a state of mind that is not deemed sufficient to satisfy a recklessness threshold is to chill all statements, because the prosecutor can always go that route, and anyone who is thinking of making a comment in the political context is aware from the face of the statute that there is a risk of prosecution, and that is a dangerous consequence of the meaning of the statute. Second, my friend talked about how the North Carolina legislature has passed this statute on a number of occasions or amended the general provisions. But in no instance did it ever come forward with evidence that this statute is necessary to accomplish a compelling interest in electoral integrity. And it could have tried, for example, to say, well, the states that have these statutes have much cleaner campaigns and candidates are far more respectful, careful of the truth, and the states that don't have them, the 40 states, lies are rampant and campaigns are sullied by false statements. It has done nothing to make any demonstration of that kind. I don't think any demonstration of that kind could be made, and it therefore has not satisfied the compelling burden in the First Amendment context of coming forward with empirical evidence, not just statements or hypotheses or speculation. And this court's own precedents, as you pointed out, Judge Diaz, require that there be empirical evidence. The Supreme Court reaffirmed that requirement just last term in FEC v. Cruz, 142 Supreme Court, 1638 at page 1653. In the First Amendment context, evidence is needed to sustain a burden on political speech. The other argument that my friend makes is that Garrison puts criminal defamation statutes on a sound frame. I don't agree with that, but assuming that that is true, there's a mismatch between the interest that the state is asserting in this case and the purpose of criminal defamation statutes. They grew out of a regime in which there was an effort to prevent people from engaging in duels, and so there was a desire to provide a governmental remedy that would encourage people not to go out and walk off ten paces and fire bullets at each other. Criminal defamation may have outgrown that purpose, and then it just serves as a reputation-protecting mechanism. But in this case, the state's brief, as I read it, is not really saying that this is needed to protect candidates' reputations against scarless allegations in campaigns. And I think in America campaigning, that would be a very difficult sell. The interest that's asserted is in electoral integrity, protecting the citizens' and the voters' right to make the decisions about who to elect. And that is not aligned with the interest in reputation protection, and it is at odds with our fundamental commitment to democracy, where the voters decide based on the competing merits of the candidates, and they're able to go to the polls and then express their views on it. And then finally, the court has recognized that counterspeech is the preferred remedy in Alvarez, in the political context, in the Citizens United case, and the idea that counterspeech has become somehow less effective in this environment where politicians have access to the airwaves and the Internet to respond to each other, as occurred in this case, does not accord with our political reality. So... Can I ask a brief question about that? So, that's true, and we've got all these technological advances that provide information, but there's also the potential for greater misinformation. So, I mean, why wouldn't a statute like this counter that, simply by deterring that kind of misinformation? Judge Diaz, the fundamental problem with a statute like this is it puts governmental officials in the position of being arbiters of truth in a political campaign, and it invites abuses, such as one candidate filing charges with the Board of Election against the other and being able to go out and say, impress, I'm invoking the machinery of the state, because these lies merit prosecutions. North Carolina's law is particularly poorly tailored because it allows any of the more than 40 district attorneys to initiate a prosecution, even if, in a case like this, the Board of Elections investigates and concludes that there is no merit to a charge. It also provides for the opportunity of individual citizens to go to court and ask the court to find a prima facie case and initiate a prosecution, and it permits the appointment of special prosecutors for that purpose if all of the DAs in the state turn it down. And that kind of a blunderbuss approach of bringing the state's machinery and putting a thumb on the scales of candidate debates in a political campaign is likely to do far more damage to the political process than any minor deterrent effect, which I think actually translates to First Amendment chill rather than a benefit. And these are not new ideas. In the report on the Virginia resolution that Madison wrote to decry the Alien and Sedition Act, he specifically referred to candidates as being subject to vigorous public debate, and that is how our democracy works. That passage is quoted in New York Times versus Sullivan. It remains just as true today. North Carolina's law crosses that line, and for that reason we submit that it's unconstitutional. All right. Thank you very much, Mr. Friedman. Thank you. Thank you, counsel, for a case ably argued. We would typically come down from the bench and greet you personally. We have unfortunately not been able to resume that tradition. I hope someday we will, but that day is not yet here. But we nonetheless very much appreciate your arguments this morning. Thank you very much.
judges: Albert Diaz, Allison J. Rushing, Toby J. Heytens